Edward J. Wynne, SBN 165819
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd., Ste. 3G
Larkspur, CA 94939
Telephone: (415) 461-6400
Facsimile: (415) 461-3900
ewynne@wynnelawfirm.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAEED HESAMI, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE BANK, N.A. and DOES 1 through 10, inclusive,<br><br>    Defendant. | Case No.  17-cv-01418-FMO- (PLAx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        December 12, 2019<br>Time:        10:00 a.m.<br>Courtroom:  6D, 6th Floor<br>Before:      Hon. Fernando M. Olguin |

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on December 12, 2019 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Hon. Fernando M. Olguin, United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California, in Courtroom 6D on the 6th Floor, plaintiff Saeed Hesami will and hereby does respectfully move the court for final approval of the proposed class action settlement. Specifically, Plaintiff respectfully requests that the Court (1) grant final approval for the proposed class action settlement adjudging the terms of the settlement to be fair reasonable and adequate and directing that its terms and provisions be carried out; (2) approve the payment of a service enhancement to the named plaintiff; (3) approve payment of class counsels' fees and costs; and, (4) approve the settlement administrator's payment.

Plaintiff makes this motion on the grounds that the proposed settlement is fair reasonable and adequate. This Motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Robert Hyte for Settlement Administrator Settlement Services, Inc., oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

Dated:  November 18, 2019          WYNNE LAW FIRM

/s/ *Edward J. Wynne*
Edward J. Wynne
*Class Counsel*

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

INTRODUCTION .................................................................................................... 1

PROCEDURAL STATEMENT ................................................................................ 2

    A.    Litigation Through Preliminary Approval ................................................. 2

    B.    Settlement Administration ......................................................................... 5

SUMMARY OF SETTLEMENT TERMS ............................................................... 6

    A.    Settlement Fund ......................................................................................... 6

    B.    Class Definition ......................................................................................... 6

    C.    Class Representatives and Class Counsel .................................................. 6

    D.    Notice Procedure ....................................................................................... 6

    E.    Plan of Allocation ..................................................................................... 7

        1.    Net Settlement Fund. ..................................................................... 7

        2.    Attorney's Fees, Costs and Enhancements .................................... 7

        3.    LWDA payment. ............................................................................ 7

        4.    Notice Administration .................................................................... 7

STANDARDS FOR FINAL APPROVAL ................................................................ 7

    A.    The Settlement is Entitled to a Presumption of Fairness ......................... 8

        1.    The Settlement was Reached Through Arm's-Length
            Negotiations .................................................................................. 8

        2.    Substantial Investigation has Been Completed ............................. 8

        3.    Class Counsel is Experienced and Endorses the Settlement ........ 9

        4.    There Are No Objections to the Settlement ................................... 9

    B.    The Risk and Expense of Further Litigation ............................................ 9

    C.    The Amount Offered in Settlement ........................................................ 11

        1.    Evaluation of the Overall Settlement Amount. ........................... 12

        2.    Evaluation of the PAGA Allocation ........................................... 13

        3.    Evaluation of the Injunctive Relief ............................................. 14

CONCLUSION ...................................................................................................... 14

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Bautista v. Harvest Management Sub LLC*,

4      *(C.D. Cal., July 14, 2014)* 2014 WL 12579822..................................................14

5

6      *Boyd v. Bechtel Corp.*,
       485 F.Supp. 610 (N.D. Cal. 1979) ............................................................8, 9

7

8      *Casida v. Sears Holding Corp.*,

9      2012 WL 3260423 (E.D. Cal. Aug. 8, 2012)...........................................11

10

11     *Class Plaintiffs v. Seattle*,
       955 F.2d 1268 (9th Cir. 1992)....................................................................8

12

13     *Ellis v. Naval Air Rework Facility*,

14     87 F.R.D. 15 (N.D. Cal. 1980) aff'd., 661 F. 2d 939 (9th Cir. 1981)..............8, 9

15

16     *Epic Sys. Corp. v. Lewis*,
       138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018) ...........................................2

17

18     *Fisher Bros. v. Cambridge-Lee Industries*,

19     630 F.Supp. 482 (E.D. Pa. 1985) ...........................................................9

20

21     *Hanlon v. Chrysler Corp.*,
       150 F.3d 1011 (9th Cir. 1998)...................................................................7

22

23     *Henderson, et al. v. JPMorgan Chase Bank*,

24     C.D. Cal. Case No. 2:11-cv-03428-PSG-PLA.......................................11

25

26     *Hightower v. JPMorgan Chase Bank*,
       C.D. Cal. Case No. 11-cv-01802-PSG (PLAx) ....................................11

27

28

1
2

*Hopson v. Hanesbrands,*
   CV 08-0844 EDL, 2008 WL 3385452 (S.D. Cal. Apr. 13, 2009)......................14

3
4

*In re Heritage Bond Litigation*,
   2005 WL 1594403..................................................................................................8

5
6
7

*In re M.L. Stern Overtime Litig.*,
   No. CV 07-0118 BTM (JMAx), 2009 WL 995864, (S.D. Cal. Apr. 13, 2009) .14

8
9

*In re Warner Communications Sec. Litig.,*
   618 F. Supp. 735 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986).................8

10
11
12

*Joel A. v. Giuliani,*
   218 F.3d 132 (2d Cir. 2000)................................................................................7

13
14
15

*Musgraves v. Sears Holding Mgmt. Corp.,*
   2012 WL 3222905 (C.D. Cal. July 19, 2012) ...................................................10

16
17
18

*Officers for Justice v. Civil Service Com.,*
   688 F.2d 615 (9th Cir. 1982)........................................................................8, 10

19
20

*Patel v. Nike Retail Servs.,*
   2016 WL 1241777 (N.D. Cal. Mar. 29, 2016)..................................................10

21
22
23

*Villalobos v. Calandri Sonrise Farm LP*,
   No. CV 2122615 PSG (JEMx), 2015 WL 12777959 (C.D. Cal. Dec. 4, 2015).14

24
25
26
27
28

*Zackaria v. Wal-Mart Stores,*
   2015 WL 2412103 (C.D. Cal. May 18, 2015) ...................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**State Cases**

*Dunk v. Ford Motor Company,*
   48 Cal.App.4th 1794 (1996) .......................................................8, 9, 10

*Duran v. US Bank,*
   59 Cal.4th 1 (2014) .........................................................................11

*Nordstrom Comm'n Cases,*
   186 Cal.App.4th 576 (2010) ...........................................................14

**Statutes, Rules & Regulations**

Business & Professions Code,
   § 17200 ..............................................................................................2

Federal Rules of Civil Procedure,
   23(e) ...................................................................................................7

Federal Rules of Civil Procedure,
   Rule 26(f) ..........................................................................................2

Federal Rules of Civil Procedure,
   Rule 30(b)(6) .....................................................................................3

Labor Code,
   § 203 ...........................................................................................2, 13

Labor Code,
   § 226 ...........................................................................................2, 13

Labor Code,
   § 226.7 ........................................................................................2, 13

Labor Code,
  § 510.................................................................................................2, 13

Labor Code,
  § 512.................................................................................................2, 13

Labor Code,
  § 1174.....................................................................................................2

Labor Code,
  § 1195.....................................................................................................2

Labor Code,
  § 2698.....................................................................................................2

Labor Code,
  § 2802............................................................................................2, 3, 12

Labor Code,
  § 2699.....................................................................................................7

29 U.S.C.,
  § 201.......................................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Saeed Hesami ("Plaintiff") seeks final approval of this $1,850,000 non-reversionary all-cash settlement between Plaintiff and Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase"). The proposed settlement before this Court will dispose of this case.

On June 21, 2019, the Court granted preliminary approval of this settlement. (Dkt. 60.) The Preliminary Approval Order appointed Settlement Services, Inc. ("SSI") as the Settlement Administrator and approved the Class Notice and Claim Form. Plaintiff hereby reports that the Notice was mailed by the Settlement Administrator to all 534 members of the certified class and a website was created for class members to submit a claim, read a description of the case, see the Notice, download important documents including the Motion for Attorneys' Fees, see important dates, make address changes, and contact Plaintiff's counsel.

Class members had until September 24, 2019 to object, opt-out, or challenge their award. Fully 353 Class Members, or 66% of the class, submitted claims. (Declaration of Robert Hyte, Settlement Administrator of Settlement Services, Inc. ("Hyte Decl."), filed herewith, ¶ 8.) Plaintiff will submit a supplemental report from the Administrator prior to the Final Approval hearing to the extent there are any updates to the Administrator's report filed with this Motion. As of this writing, no one has objected to the settlement and just three class members, representing just .005% of the class, have opted out. (Hyte Decl., ¶ 9.) Class members can expect to receive on average $2,430.24 and the highest recovery is $4,775.83. (Hyte Decl., ¶ 13.)

Plaintiff respectfully submits that the favorable reaction of Class Members to the Settlement supports a finding that the settlement is fair, reasonable and adequate. As discussed more fully below, the proposed Settlement provides substantial economic benefits and is in the best interests of the Class. Plaintiff requests that the

Court should grant final approval to the Settlement and authorize the parties to proceed with payment to the Class Members.

## PROCEDURAL STATEMENT

### A.    Litigation Through Preliminary Approval

On November 8, 2016, Plaintiff Saeed Hesami filed the instant action against Chase in the Los Angeles County Superior Court of California on behalf of exempt BRMs in California alleging misclassification under California law. Plaintiff alleged the following claims: (1) Labor Code §§ 510 and 1195 (over time compensation); (2) Labor Code §§ 226.7 and 512 (meal and rest breaks); (3) Business & Professions Code § 17200 (overtime and meal/rest breaks); (4) Labor Code § 2802 (business expenses); (5) Labor Code §§ 226 and 1174 (wage statements); and (6) Labor Code § 203 (waiting time penalties).

On January 13, 2017, Plaintiff filed a First Amended Complaint ("FAC") adding a cause of action under Labor Code § 2698, et seq. (Dkt. 1-1.) On February 21, 2017, Chase removed the case to the Central District of California. (Dkt. 1.) On February 28, 2017, Defendant filed its answer to the FAC. (Dkt. 9.) Defendant alleges the executive, administrative, outside sales, and/or a "combination" of these exemptions as affirmative defenses. (Dkt. 9, p. 9.)

On March 23, 2017, the parties filed their Joint Rule 26(f) Report following the conference of counsel. (Dkt. 13.) In the Statement, Defendant stated its intention to file a motion to compel arbitration. Also in March 2017, both sides propounded written discovery on each other. Plaintiff propounded interrogatories and multiple sets of requests for production to which Defendant responded. Defendant likewise propounded interrogatories and document requests to which Plaintiff responded to. (Dkt. 56-2, Decl. of Wynne, ¶ 12.)

Throughout April and May 2017, the parties engaged in lengthy discussions regarding the enforceability of Defendant's arbitration agreement especially in light of the United States Supreme Court's pending decision at that time in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018). As a result, on June 1,

2017, Plaintiff filed a Motion to Amend to drop his legal claims and pursue the case solely under his PAGA cause of action. (Dkt. 17.) The basis of the motion was due to the fact that Plaintiff had signed an arbitration agreement with Defendant which contained a class action waiver. Defendant did not oppose Plaintiff's motion. (Dkt. 18.) The Motion was granted on June 20, 2018 and Plaintiff filed his Second Amended Complaint ("SAC") the following day. (Dkt. Nos. 19 and 20.) Defendant answered the SAC on July 6, 2018. (Dkt. 21.)

On August 17, 2018, the parties filed a Stipulated Protective Order due to the confidential nature of some of the documents Plaintiff sought in discovery. (Dkt. 22.) The Court approved the order, as amended, on August 18, 2018. (Dkt. 23.)

On December 18, 2017, Plaintiff had his deposition taken.

On December 27, 2017, Plaintiff agreed to seek dismissal without prejudice of his claim for unreimbursed business expenses brought pursuant to Labor Code § 2802. (Dkt. 31.) The Court granted the request on January 3, 2018. (Dkt. 32.)

On January 10 and 23, 2018, Plaintiff took Defendant's deposition pursuant to Rule 30(b)(6) on a number of topics. Defendant produced two witnesses pursuant to Plaintiff's deposition notice.

After meeting and conferring regarding Defendant's discovery responses, the parties agreed to a privacy notice being sent to 50% of the PAGA class. On February 23, 2018 the privacy notice was sent by a notice administrator. The opt-out deadline expired March 26, 2018.

Once Plaintiff was given access to half of the putative PAGA class, Plaintiff distributed a questionnaire seeking information on relevant information and received 37 responses. Plaintiff presented the information gathered from the questionnaires at the subsequent mediation.

On April 2, 2018, the parties reported that they had retained the Hon. Dickran Tevrizian (ret.) to mediate their case and had engaged in settlement discussions. The parties informed the Court that further discussions were necessary and that they had scheduled a mediation session for July 10, 2018. (Dkt. 37.) Relatedly, the parties

filed a joint stipulation and request to stay the proceedings pending the mediation. (Dkt. 38.) The Court granted the requested stay on April 30, 2018. (Dkt. 39.)

On July 10, 2018, the parties conducted mediation with the Hon. Dickran Tevrizian (ret.). (Dkt. 40.) The parties reported to the Court and requested a continuance to consider a mediator's proposal which was granted on July 16, 2018. (Dkt. 41.) During the intervening period, Plaintiff was actively involved in discussing and considering the proposed settlement terms. Based on counsel's recommendation, Plaintiff accepted the mediator's proposal. On July 24, 2018, the parties reported that a settlement had been reached. (Dkt. 42.) On July 26, 2018, the Court issued a minute order setting dates for preliminary approval. (Dkt. 43.)

As a part of the proposed settlement to include claims under the Fair Labor Standards Act of 1938, as amended, ("FLSA"), 29 U.S.C. § 201, *et seq.* for California BRMs I and II, Plaintiff agreed to amend his complaint to add this cause of action via stipulation. (Dkt. 47.) The Court granted the request on September 12, 2018 and the Plaintiff filed the Third Amended Complaint that same day. (Dkt. Nos. 49 and 50.)

On September 11, 2018, Plaintiff filed a Motion for Preliminary Approval of a class action settlement. (Dkt. 48.) On October 15, 2018, the Court denied the Motion without prejudice identifying certain deficiencies in the proposed settlement. (Dkt. 52.) On November 5, 2018, Plaintiff filed a Supplemental Brief and supporting declaration in support of the Motion for Preliminary Approval addressing each of the concerns raised by the Court. (Dkt. 53.) On November 6, 2018, the Court struck the supplemental filing stating that no hearing date was provided. (Dkt. 54.) On November 7, 2018, the Court issued a minute order setting a deadline for Plaintiff's revised motion for preliminary approval. (Dkt. 55.)

On November 15, 2018, Plaintiff filed a renewed Motion for Preliminary Approval and Motion for Class Certification. (Dkt. 56.) The Court heard the motions on December 13, 2018. On June 21, 2019, the Court granted preliminary approval of the proposed settlement and certified the following class:  any individual employed

by Chase a BRM I and/or II in California during the period from November 14, 2015 through preliminary approval and who does not timely opt-out of the Settlement Class. (Dkt. 60.)

**B.    Settlement Administration**

After the Court granted preliminary approval, on July 8, 2019, Defendant provided the class data to SSI including the names, last know residence addresses, and social security numbers as well as dates of employment. (Hyte Decl., ¶ 3.) On July 15, 2019, Defendant transferred the Maximum Settlement Amount of $1,850,000 to SSI which placed the amount in an interest bearing account. (Hyte Decl., ¶ 12.) The settlement sum has earned $1,217.17 in interest as of this date. (*Id.*)

On July 26, 2019, SSI mailed the Notice Packet to all class members. (Hyte Decl., ¶ 6.) The Settlement Administrator received 18 returned Notice Packets and was able to locate 16 new addresses and re-mailed the Notice Packet to those Class Members. (Hyte Decl., ¶ 7.)

On September 26, 2019, Plaintiff filed his Motion for Attorney Fees and Request for Enhancement Award. (Dkt. 62.) The motion has been uploaded to the Settlement Administrator's site for review by class members.

The Settlement Administrator established a dynamic website for Class Members where they could submit claims online, read the Notice, or obtain contact information. (Hyte Decl., ¶ 4.)

The Settlement Administrator set up telephone support line with a toll-free number to answer Class Member questions and submit address changes. (Hyte Decl., ¶ 5.) SSI received 65 calls from Class Members to-date. (*Id.*)

As of this date, SSI has received 354 claims. (Hyte Decl., ¶ 8.) This represents 66% of the class.

As of this date, no class member has submitted an objection and just three class members have opted out. (Hyte Decl., ¶¶ 9-10.)

Class members can expect to receive $13.77 per workweek. (Hyte Decl., ¶

13.) The smallest possible award will be $11.81, the largest award will be $4,755.83 and the average award is $ 2,430.24. (*Id*.)

**SUMMARY OF SETTLEMENT TERMS**

The details of the settlement are set forth in the fully-executed Joint Stipulation of Class Action Settlement. (Dkt. 56-2, Ex. 1, Joint Stipulation for Settlement, Decl. of Wynne.) A summary is set forth below:

**A.    Settlement Fund**

In return for a release of claims, Defendant shall pay $1,850,000 as a part of a non-reversionary claims-made settlement with all of the Net Settlement Fund paid to participating class members on a pro rata basis based on workweeks during the settlement period which extends from the beginning of the statutory coverage of this action through preliminary approval which was granted on June 21, 2019. Also, the Class will receive its portion of the interest earned on the Settlement Amount deposited with the Settlement Administrator. The Net Settlement Fund is the gross amount less deductions for attorneys' fees and costs, class representative enhancement award, payment to the LWDA, employees' share of payroll taxes, and settlement administration fees and costs.

**B.    Class Definition**

The Court certified for settlement purposes only the following class defined as any individual employed by Chase a BRM I and/or II in California during the period from November 8, 2012 through June 21, 2019 and who does not timely opt-out of the Settlement Class.

**C.    Class Representatives and Class Counsel**

The Court appointed plaintiff Saeed Hesami as the class representative and appointed Edward J. Wynne, Wynne Law Firm, as class counsel.

**D.    Notice Procedure**

The Court appointed Settlement Services Inc. (SSI) as the Claims Administrator. After updating the database provided by Defendant, the Claims Administrator mailed the Notice, Claim Form and Opt-Out card to each class

member including the URL of an interactive, password protected website. The interactive website allows class members to complete and file a Claim Form online. Class members may also submit a claim form via regular mail. The Claims Administrator also sent out a reminder card halfway through the claims period to any class member who had not submitted a claim reminding them of the deadline. The Claims Administrator also had live telephone support for any class member requests or inquiries.

**E.    Plan of Allocation**

**1.    Net Settlement Fund:** The Net Settlement Fund is estimated to be $1,299,250. Payments to individual Class Members shall be calculated and apportioned from the Net Settlement Amount based on the amount of workweeks during the settlement class period.

**2.    Attorney's Fees, Costs and Enhancements:** Pursuant to the parties' agreement, Plaintiff's counsel has asked the Court to award 25% of the settlement fund or $462,500 for fees in addition to actual litigation costs of up to $20,000. (Dkt. 62.) In addition, the named Plaintiff will be asking for $20,000 for an enhancement. Plaintiff's support for the settlement is not conditioned upon approval of his requested award. (Dkt. 62-2, ¶ 9.)

**3.    LWDA payment:** The parties have agreed that the value of the PAGA claim is $25,000. Accordingly, 75% or $18,750, will be paid to the LWDA per Labor Code § 2699 (i) to settle this claim.

**4.    Notice Administration:** SSI has agreed to provide all services as contemplated in the Joint Stipulation and cap its fee at $29,500.

## STANDARDS FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In

determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403, citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

## A.    The Settlement is Entitled to a Presumption of Fairness

A class action settlement is entitled to a presumption of fairness when:  (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and, (4) the percentage of objectors is small.  *Dunk v. Ford Motor Company,* 48 Cal.App.4th 1794, 1802 (1996) quoting *Officers for Justice v. Civil Service Com.,* 688 F.2d 615, 625 (9th Cir. 1982).

### 1.    The Settlement was Reached Through Arm's-Length Negotiations

This settlement was the result of arm's-length negotiations overseen by experienced mediator, the Hon. Dickran Tevrizian (ret.). While no settlement was reached at mediation, the parties continued to negotiate and subsequently reached a settlement that is before this Court.

### 2.    Substantial Investigation has Been Completed

The stage of the proceedings and the amount of investigation completed is an important factor that the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 741 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) aff'd., 661 F. 2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 616-17 (N.D. Cal. 1979). Here, extensive discovery was conducted as outlined in the Motion for Preliminary Approval including, but not limited to, multiple sets of written discovery, the exchange of documents, depositions of the Plaintiff and Defendant's corporate representative, and informal discovery in terms of contacts with class members by Class Counsel to obtain declarations from them.

### 3.    Class Counsel is Experienced and Endorses the Settlement

As detailed in the Motion for Preliminary Approval, experienced counsel operating at arm's-length has weighed all of the risk factors and endorses the proposed settlement. The view of the attorneys actively conducting the litigation is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F.Supp. 482, 488 (E.D. Pa. 1985); see also, *Ellis*, 87 F.R.D. at 18; *Boyd,* 485 F. Supp. at 616-17.

Class Counsel has extensive wage and hour class action experience. (Dkt. 62-1, Decl. of Wynne, ¶¶ 3-7.) Thus, Class Counsel is experienced and qualified to evaluate the class claims and viability of the defenses. Class Counsel is satisfied that the recovery for each Class Member is fair and reasonable taking into consideration the potential recovery as compared to the actual recovery, the stage of the litigation when the settlement was reached, the risks inherent in any litigation and the specific risks in this case, and the reasonable tailoring of each Class Member's claim to the amounts received. This settlement is fair, adequate and reasonable and in the best interests of the Class.

### 4.    There Are No Objections to the Settlement

Perhaps the most significant endorsement for the proposed settlement in this case is the fact that <u>not a single Class Member</u> has objected to any aspect of the proposed settlement. Class Members were specifically provided with the option of objecting to the terms of the Settlement and not a single objection has been received. The final factor in *Dunk* is that the percentage of objectors is small.  Here, there are no objections. In addition, just 3 people out of 534 decided to opt-out representing just .005% of the class. This Court should properly construe the lack of any expressed opposition to the Settlement as a very strong indicator that the Class Members view the settlement as fair, adequate and reasonable.

## B.    The Risk and Expense of Further Litigation

At the final approval hearing the Court may consider other relevant factors,

such as the strength of the plaintiff's case, the risk, expenses, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant and the reaction of the Class Members to the proposed settlement. *Officers for Justice,* 688 F.2d at 624. "This list is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk*, 48 Cal.App.4th at 1801.

The risks, complexity, and expenses of this action and the expected duration of this litigation all weigh in favor of final approval. Defendant will argue that regardless of whether the Plaintiff claims to have been engaged in non-exempt work most of the time, such activity was inconsistent with the realistic expectations of the position. While Plaintiff contends that the realistic expectations are to be primarily engaged in non-exempt work, Defendant will point to various documents such as the job description, performance reviews, emails, and disciplinary notices to argue that the realistic expectation for BRMs was to be primarily engaged in exempt work. If such a determination was made, there is a possibility that Defendant could prevail. *See, e.g., Musgraves v. Sears Holding Mgmt. Corp.*, 2012 WL 3222905, at *1-2 (C.D. Cal. July 19, 2012). In *Musgraves*, the court granted the employer's motion for summary judgment on the plaintiff's exempt status despite plaintiff's dispute that he spent the majority of his time engaged in non-exempt work. The court found that the employer's expectation that the plaintiff spent most of his time engaged in exempt work was realistic and entered judgment accordingly. *Id*. at *8.

In addition to the merits of the claim, there is also the question of class certification. Defendants frequently argue against certification on the basis of variation in how class members performed their jobs. *See, e.g., Patel v. Nike Retail Servs., Inc.,* 2016 WL 1241777 (N.D. Cal. Mar. 29, 2016) (denying class certification of misclassification claims on behalf of retail assistant managers); *Zackaria v. Wal-Mart Stores, Inc*., 2015 WL 2412103, at *16 (C.D. Cal. May 18,

2015) (finding that plaintiffs could not satisfy predominance requirements in misclassification case despite evidence that employees were "classifie[d] uniformly as exempt" and "overall job expectations [we]re roughly identical"); *Casida v. Sears Holding Corp.*, 2012 WL 3260423 (E.D. Cal. Aug. 8, 2012) ("The [blanket exemption] policies at issue here do not tell the Court with any specificity how AMs actually spend their time."). Indeed, judges in this Judicial District have denied certification of a case against this very Defendant involving other branch personnel finding that too much variation amongst the class. *Henderson, et al. v. JPMorgan Chase Bank*, C.D. Cal. Case No. 2:11-cv-03428-PSG-PLA, Dkt. No. 116, Order Denying Class Certification, at 13 (Gutierrez, J.).

As set forth in Plaintiffs' Motion for Preliminary Approval, Class Counsel's personal experience in *Duran v. US Bank*, 59 Cal.4th 1 (2014) perhaps best exemplifies another area of risk inherent in complex litigation. In sum, after getting the case certified and prevailing at trial, the judgment was reversed by the Court of Appeal, affirmed by the Supreme Court, and plaintiffs' second effort at certification in the Superior Court was denied (and affirmed by the Court of Appeal) after 17 years of hard-fought litigation. Thus, even prevailed at trial is no guarantee of success.

## C.    The Amount Offered in Settlement

The gross settlement amount is $1,850,000. The net settlement amount is approximately $1,299,250. Class members can expect to receive $13.77 per workweek. (Hyte Decl., ¶ 13.) The smallest possible award will be $11.81, the largest award will be $4,755.83 and the average award is $ 2,430.24. (*Id.*) Counsel notes that these numbers exceed the estimates Plaintiff provided at Preliminary Approval which the Court approved. Cf. Dkt. 56, p. 10.

Putting this amount in perspective, a settlement on behalf of Assistant Branch Managers employed by this very Defendant who alleged unpaid overtime was given approval which had an average recovery of $200 per class member. *Hightower v. JPMorgan Chase Bank*, C.D. Cal. Case No. 11-cv-01802-PSG (PLAx) (Gutierrez,

J.) (Dkt. 214). Given all the risks of continued litigation as identified above, the amount offered in settlement is very reasonable.

### 1.    Evaluation of the Overall Settlement Amount.

There are a number of factors that go into the estimated value of the claims asserted in the Third Amended Complaint.

First, when Defendant removed the case, all BRMs were at issue. As this settlement only covers BRMs I and II, the amount in controversy has been reduced since the estimate at the time of removal. Additionally, at time of removal, Plaintiff's fifth cause of action for unreimbursed business expenses under Labor Code § 2802 was at issue. (Dkt. 1-1.) However, during the course of discovery, Plaintiff determined that the claim was not viable and the parties agreed to dismiss the claim without prejudice. (Dkt. 31.) Thus, Defendant's estimate of the amount in controversy at removal was based on claims not being resolved in this settlement.

Second, due to the fact that Defendant had secured arbitration agreements with class action waivers, the non-PAGA claims were given no value. As the Court's docket reflects, when Defendant raised the issue of moving to compel this case to arbitration due to the arbitration agreements with class action waivers, Plaintiff brought a motion to amend to dismiss all the non-PAGA claims and proceed only under PAGA which the Court granted. (Dkt. Nos. 17 and 19.) While the complaint has been amended again to include the non-PAGA claims, that was for the purpose of having a settlement with a release of claims that would fully and finally end this litigation. In other words, no defendant would settle for a release that only covered PAGA claims and leave itself open to suit for the exact same claims under a different theory.

Third, the settlement only covers BRMs I and II and specifically excludes BRMs III and BRMs Sr. These BRMs worked 38,976 workweeks during the PAGA class period (November 14, 2015 to July 5, 2018) which equates to 19,488 pay periods. Accordingly, for each of the causes of action as set forth in the chart below, Plaintiff estimated the value as approximately $7.8m.

| CLAIM | RATE | PENALTY |
|---|---|---|
| 1. Labor Code § 510 (overtime) | $100 x 19,488 pay periods | $1,948,800 |
| 2. Labor Code § 512 (meal periods) | $100 x 19,488 pay periods | $1,948,800 |
| 3. Labor Code § 226.7 (rest break) | $100 x 19,488 pay periods | $1,948,800 |
| 4. Labor Code § 203 (pay at time of termination) | $100 x 2 pay periods x 194 former BRMs | $38,800 |
| 5. Labor Code § 226 (pay stubs) | $100 x 19,488 pay periods | $1,948,800 |
| **TOTAL THRU P.A.** | | **$7,834,000** |

With exposure of approximately $7.8 million, not including attorney's fees, Plaintiff determined that a settlement representing approximately 25% of Defendant's exposure was very acceptable in light of the risks of continued litigation. Moreover, this estimated exposure "stacks" PAGA penalties for multiple violations even though it is Defendant's contention that it is unsettled whether PAGA provides for such stacking.

### 2. Evaluation of the PAGA Allocation

The parties have agreed to evaluate the PAGA claims at $25,000. The parties submit this amount is fair, reasonable and adequate. First, any settlement with Defendant would require Plaintiff to fold-back in the non-PAGA claims thus eliminating a pure PAGA settlement. Thus, this is not a PAGA-only settlement. Second, the Labor Workforce Development Agency was given notice on September 13, 2018 of the settlement and, specifically, the amount that was being attributed to PAGA. (Dkt. 56-2, Notice of Prop. Settlement to LWDA attached as Ex. 3 to Decl. of Wynne.) As of this date, the LWDA has not expressed any objection to the allocation. (Dkt. 56-2, Decl. of Wynne, ¶ 30.) Third, the amount requested is in line with amounts awarded by this Court and other courts both in terms of a relative amount and absolute amount. In *Villalobos v. Calandri Sonrise Farm LP*, No. CV

2122615 PSG (JEMx), 2015 WL 12777959, (C.D. Cal. Dec. 4, 2015), Judge Gutierrez approved a $5,900 allocation to the LWDA representing .8% of the settlement. 2015 WL 12777959, at *3. In *Bautista*, *supra*, 2014 WL 12579822, this Court approved a $15,000 allocation to the LWDA representing .6% of the settlement. 2014 WL 12579822 at *1. *See also, In re M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM (JMAx), 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 2% or $20,000); *Hopson v. Hanesbrands, Inc.*, CV 08-0844 EDL, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving a PAGA settlement of .3% or $1,500). Indeed, some courts have approved settlements alleging PAGA where no allocation was made to the claim. *See, e.g., Nordstrom Comm'n Cases*, 186 Cal.App.4th 576, 589 (2010) (approving settlement of wage and hour class claims and PAGA claims under which no money was allocated to the PAGA claims).

Here, the $25,000 allocation to the LWDA represents 1.3% and is therefore within the range of allocations courts have approved.

**3.    Evaluation of the Injunctive Relief**

There is no injunctive relief that is a part of the settlement. While the Third Amended Complaint alleges injunctive relief as one of the potential remedies, there was no value attributed to this claim for relief because Defendant has not reclassified its BRMs I and II.

## CONCLUSION

In light of the forgoing, Plaintiff respectfully requests that the Court grant the motion for final approval of the class action settlement and authorize payment to the class.

DATED:  November 15, 2019                WYNNE LAW FIRM


                                         */s/ Edward J. Wynne*
                                         Edward J. Wynne
                                         *Class Counsel*