

FILED
CLERK, U.S. DISTRICT COURT

12/30/2019

CENTRAL DISTRICT OF CALIFORNIA
BY:    CW    DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAEED HESAMI, individually and on behalf of all other similarly situated, | Case No. CV 17-1418 FMO (PLAx) |
| Plaintiff, | **ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| JPMORGAN CHASE BANK, | |
| Defendant. | |

Having reviewed and considered all the briefing filed with respect to plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. 63, "Motion"), and plaintiff's Motion for Attorneys' Fees and Costs and Class Representative Award (Dkt. 62, "Fees Motion"), and the oral argument presented at the hearing on December 12, 2019, the court concludes as follows.

**BACKGROUND**

On January 13, 2017, Saeed Hesami ("plaintiff" or "Hesami") filed a class action complaint against JPMorgan Chase Bank, National Association ("defendant" or "Chase") in Los Angeles County Superior Court, asserting violations of the California Labor Code and California Business and Professions Code ("UCL") §§ 17200, et seq. (See Dkt. 1-1, Complaint). On February 21, 2017, defendant removed the action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (See Dkt. 1 Notice of Removal). On June 21, 2017, plaintiff filed a Second Amended Complaint ("SAC"), which omitted the class allegations and asserted a single claim under the California Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698 et seq. (Dkt. 20, SAC). On September 12, 2018, plaintiff filed the operative Third Amended Complaint

("TAC"), re-asserting class claims and adding a collective action claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.. (See Dkt. 50, TAC). The TAC asserts claims for: (1) failure to pay overtime compensation, Cal. Lab. Code §§ 510, 1194; Cal. Bus. Prof. Code § 17203; 29 U.S.C. §§ 201, et seq.; (2) failure to provide and document meal and rest breaks, Cal. Lab. Code § 512; Cal. Bus. & Prof. Code §§ 17200, et seq.; California Industrial Welfare Commission ("IWC") Wage Order No. ("Wage Order No.") 4-2001; (3) unlawful wage statements, Cal. Lab. Code §§ 226, 1174, 1174.5; (4) failure to pay wages at termination, Cal. Lab. Code §§ 201-203; and (5) penalties pursuant to the PAGA. (See Dkt 50, TAC).

This case arises from allegations that Chase improperly classified plaintiff and similarly situated employees, who worked for Chase as Business Relationship Managers I and II ("BRMs"), as exempt under state and federal wage and hour law. The improper classification resulted in plaintiff and the class being denied overtime compensation, meal and rest breaks, proper wage statements, and wages at the time of separation. (See Dkt 50, TAC at ¶¶ 1, 5, 10-13). In July 2018, after an all-day mediation before the Hon. Dickran Tevrizian (Ret.), the parties reached a settlement. (See Dkt. 60, Court's Order of June 21, 2019 ("Preliminary Approval Order" or "PAO") at 3). The parties have defined the settlement class as "all employees of Defendant who worked in California between November 14, 2015, and the Date of Preliminary Approval, inclusive, in a Class Position." (See Dkt. 56-2, Exh. 1, Joint Stipulation of Class Action Settlement And Release ("Settlement Agreement"); Dkt. 57 Addendum to Joint Stipulation of Class Action Settlement and Release ("Addendum") at 1; Dkt. 60, PAO at 3). "Class Position" is defined as "any exempt Business Relationship Manager ('BRM') I or II who worked for Defendant in California during the Class Period." (Dkt. 56-2, Exh. 1, Settlement Agreement at ¶ 10; Dkt. 60, PAO at 3).

Pursuant to the settlement, Chase will pay a non-reversionary gross settlement amount of $1,850,000, which will be used to pay class claims, the PAGA payment to the California Labor and Workforce Development Agency ("the LWDA"), the claims administration fee, attorney's fees and costs, and a class representative service award. (See Dkt. 56-2, Exh. 1, Settlement Agreement at ¶¶ 26, 28, 53.d; Dkt. 60, PAO at 3). Pending court approval, the settlement provides for up to $462,500 (or 25% of the gross settlement amount) in attorney's fees, (Dkt. 56-2, Settlement

Agreement at ¶ 53.d.ii); litigation costs up to $20,000, (id.); an incentive payment to Hesami of up to $20,000, (id. at ¶ 53.d.iii); settlement administration costs, (id. at ¶ 53.d.v.); and $18,750 to the LWDA. (Id. at ¶ 53.d.iv).

On June 21, 2019, the court granted preliminary approval of the settlement, appointed Settlement Services Inc. ("SSI") as settlement administrator, and directed SSI to provide notice to the class. (See Dkt. 60, PAO at 20-21). After the court issued its Preliminary Approval Order, SSI implemented the notice program approved by the court. (See Dkt. 63, Motion at 5; Dkt. 63-1, Declaration of Robert Hyte ("Hyte Decl.") at ¶¶ 6-7; Dkt. 60, PAO at 18-20 (approving notice program); Dkt. 57, Addendum, Exh. 1 (Notice), Claim Form (Dkt. 56-2, Settlement Agreement at Exh. B), and Opt-Out Form (id. at Exh. C)). Specifically, on July 26, 2019, after receiving the class list from defendant's counsel, SSI sent notice to the 534 class members via U.S. Mail, (see Dkt. 63-1, Hyte Decl. at ¶¶ 3, 6-7; Dkt. 63, Motion at 1, 5). As of December 10, 2019, SSI has received 353 valid claim forms, three requests for exclusion, and no objections. (See Dkt. 64, Supplemental Declaration of Robert Hyte ("Hyte Supp. Decl.") at ¶¶ 8-10; Dkt. 63, Motion at 1, 5). Given the number of valid claims, each class member who submitted a valid claim will receive on average approximately $2,430.24. (See Dkt. 64, Hyte Supp. Decl. at ¶ 13; Dkt. 63, Motion at 1, 5-6).

Plaintiff now seeks: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) and incentive payment for plaintiff. (See Dkt. 63, Motion; Dkt. 62, Fees Motion).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule[1] 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982). Whether to approve a class action settlement is "committed to the sound discretion of the trial

---

[1] All "Rule" references are to the Federal Rules of Civil Procedure.

1  judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting Officers

2  for Justice, 688 F.2d at 625), who must examine the settlement for "overall fairness[.]"  In re

3  Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019).  The court may not

4  "delete, modify or substitute certain provisions."  Id. (internal quotation marks omitted).  "The

5  settlement must stand or fall in its entirety."  Officers for Justice, 688 F.2d at 630.

6        In order to approve a settlement in a class action, the court must conduct a two-step

7  inquiry.[2]  First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have

8  been satisfied.  Second, it must conduct a hearing to determine whether the settlement agreement

9  is "fair, reasonable, and adequate."  See Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d

10  938, 960 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard).

11        In determining whether a settlement is fair, adequate, and reasonable, the court must

12  weigh some or all of the following factors:  "(1) the strength of the plaintiff's case; (2) the risk,

13  expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action

14  status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

15  completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the

16  presence of a governmental participant; and (8) the reaction of the class members of the

17  proposed settlement."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir.

18  2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).

19        However, when "a settlement agreement is negotiated prior to formal class certification,

20  consideration of these eight . . . factors alone is not enough to survive appellate review."

21  Bluetooth, 654 F.3d at 946 (emphasis in original).  This is because, "[p]rior to formal class

22  certification, there is an even greater potential for a breach of fiduciary duty owed the class during

23  settlement."  Id.; see Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1079 (9th Cir. 2017) ("When,

24  as here, a class settlement is negotiated prior to formal class certification, there is an increased

25  risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to

26  _____

27       [2]  If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must
also assess whether CAFA's notice requirements have been met.  See 28 U.S.C. § 1715(d).
28  Here, the parties confirmed at the fairness hearing that CAFA notice was provided.

the absent class members."). District courts, therefore, also must determine "that the settlement is not the product of collusion among the negotiating parties." Bluetooth, 654 F.3d at 947 (internal quotation and alteration marks omitted). In making that determination, courts should look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Id. (internal quotation marks and citations omitted).

## DISCUSSION

I.   FINAL APPROVAL OF CLASS SETTLEMENT.

   A.   Class Certification.

   In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3).[3] (See Dkt. 60, PAO at 7-14, 20). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e). See, e.g., Gonzalez v. BMC West, LLC, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and internal citation omitted).

   B.   Rule 23(c) Notice Requirements.

   Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including

---

[3]   The court also preliminarily certified the FLSA collective, (see Dkt. 60, PAO at 14 n. 3), and sees no need to disturb that determination.

1    individual notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice

2    requirements for classes certified under Rule 23(b)(3)).

3        After undertaking the required examination, the court approved the form of the proposed

4    class notice.  (See Dkt. 60, PAO at 18-20; Dkt. 57, Addendum, Exh. 1 (Notice); Dkt. 56-2,

5    Settlement Agreement at Exh. B (Claim Form); id. at Exh. C (Opt-Out Form)).  As discussed

6    above, the notice program was implemented by SSI.  (See Dkt. 63-1, Hyte Decl. at ¶¶ 3-7).

7    Accordingly, based on its prior findings and the record before it, the court finds that the class

8    notice and the notice process fairly and adequately informed the class members of the nature of

9    the action, the terms of the proposed settlement, the effect of the action and release of claims,

10    the class members' right to exclude themselves from the action, and their right to object to the

11    proposed settlement.

12        C.    Whether the Class Settlement is Fair, Adequate and Reasonable.

13            1.    **The Strength of Plaintiff's Case, and the Risk, Expense, Complexity,**

14                  **and Duration of Further Litigation**.

15        In evaluating the strength of the case, the court should assess "objectively the strengths

16    and weaknesses inherent in the litigation and the impact of those considerations on the parties'

17    decisions to reach [a settlement]."  Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 975

18    (internal quotation marks omitted).  "In assessing the risk, expense, complexity, and likely duration

19    of further litigation, the court evaluates the time and cost required."  Id. at 976.

20        Here, in granting preliminary approval of the settlement, the court recognized the "risks of

21    continued litigation [were] significant" and when "[w]eighed against those risks, and coupled with

22    the delays associated with continued litigation, . . . the benefits to the class" were within the range

23    of reasonableness.  (See Dkt. 60, PAO at 16).  The settlement here affords class members

24    monetary benefits in the face of various defenses to plaintiff's claims and substantial expense and

25    delay.  (See id.; Dkt. 63, Motion at 10-11).  Under the circumstances, the court finds it significant

26    that the class members will receive "immediate recovery by way of the compromise to the mere

27    possibility of relief in the future, after protracted and expensive litigation."  Nat'l Rural Telecomms.

28    Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted).

In short, the court finds that this factor supports a finding that the settlement is fair, adequate, and reasonable.

2.    **The Risk of Maintaining Class Action Status Through Trial**.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Dkt. 60, PAO at 7-14, 20). In deciding whether to certify the class for settlement purposes, the court determined that the requirements of Rule 23 for settlement purposes have been met. (See id.); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]"). Nothing has been put forth to challenge or otherwise undermine the court's previous order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class."). Accordingly, this factor weighs in favor of approving the settlement.

3.    **The Amount Offered in Settlement**.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval of the settlement, the court concluded that the settlement benefits were fair, adequate, and reasonable in light of the litigation risks in the case. (See Dkt. 60, PAO at 16-17). According to plaintiff, given the number of valid claim forms received, class members will receive approximately $13.77 per work week, with an average award of approximately $2,430.24. (See Dkt. 63, Motion at 11; Dkt. 64, Hyte Suppl. Decl. at ¶ 13). Accordingly, this factor also weighs in favor of final approval.

4.    **The Extent of Discovery Completed and the Stage of Proceedings**.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 528. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding

the case." Id. at 527 (internal quotation marks omitted).  The court previously examined these factors at length, noting that the parties had engaged in discovery, which included the depositions of plaintiff and defendant's Rule 30(b)(6) witnesses, (see Dkt. 60, PAO at 15), and "thoroughly investigated and considered their own and the opposing parties' positions[,]" (id.), which enabled them to develop "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]"  (Id.).  In other words, the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions.  See Nat'l Rural Telecomms., 221 F.R.D. at 527-28 (noting that parties' examination of the factual and legal bases of the disputed claims through completion of discovery "strongly militates in favor of the Court's approval of the settlement"); Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted).  This factor also supports approval of the settlement.

### 5.    **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  Nat'l Rural Telecomms., 221 F.R.D. at 528 (internal quotation marks and citation omitted).  Here, class counsel "is satisfied that the recovery for each [c]lass [m]ember is fair and reasonable[.]"  (Dkt. 63, Motion at 9).  Moreover, the court has previously noted that class counsel is adequate.  (See Dkt. 60, PAO at 10-11).  Thus, this factor also supports approval of the settlement.

### 6.    **The Presence of a Governmental Participant**.

There is no government participant in this matter.  Accordingly, this factor is inapplicable. See Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *10, supplemented by 2011 WL 1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this factor inapplicable to the analysis).

7.    **The Reaction of Class Members to the Proposed Settlement**.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms., 221 F.R.D. at 529.  Here, the reaction of the class has been very positive.  There were only three requests for exclusion and no objections.  (See Dkt. 64, Hyte Supp. Decl. at ¶¶ 8-10).  The lack of objections and limited requests for exclusion support approval of the settlement.  See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval when only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt outs and no objections out of the 2,385 class members).

II.    ATTORNEY'S FEES, COSTS AND SERVICE AWARD.

The Settlement Agreement provides that defendant will not oppose class counsel's request for an award of attorney's fees up to $462,500 or 25% of the gross settlement amount.  (See Dkt. 56-2, Settlement Agreement at ¶ 53.d.ii).  Class counsel now seeks such an award.  (See Dkt. 62, Fees Motion at 1).

A.    Attorney's Fee Award.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In general, courts have discretion to choose among two different methods for calculating a reasonable attorney's fee award.  See Bluetooth, 654 F.3d at 941.  Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998).  This method is typically used when a common fund is created.  See Bluetooth, 654 F.3d at 942.

Alternatively, under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See Hanlon, 150 F.3d at 1029. Once the lodestar has been determined, the "figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." Id. The lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See Bluetooth, 654 F.3d at 941. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Id. at 942; Glass v. UBS Fin. Servs., Inc., 2007 WL 221862, *14 (N.D. Cal. 2007), aff'd, 331 F.Appx. 452 (9th Cir. 2009) ("As always, when determining attorneys' fees, the district court [is] guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances.") (internal quotation marks and emphasis omitted).

Under the circumstances here, the court is persuaded that the percentage-of-fund method is the most appropriate so as to achieve a reasonable result in this case. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorneys fees." Hanlon, 150 F.3d at 1029. Courts consider "all of the circumstances of the case[,]" including the following factors in determining the percentage to be applied in a given case: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Group, Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DCD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list"). The actual percentage will vary depending on the facts of each case, but in "most common fund cases, the award exceeds that benchmark." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (internal quotation marks omitted).

Here, having considered the above factors, the court finds no reason to depart from the 25 percent benchmark as requested by class counsel. As the court previously noted, the settlement

1    amount is reasonable given defendant's defenses.  For instance, while plaintiff claimed that the

2    majority of a BRM's time is spent on non-exempt work, defendant argued that it was inconsistent

3    with the realistic expectations of the BRM position.  (See Dkt. 60, PAO at 16); see also Hensley

4    v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) ("the most critical factor is the

5    degree of success obtained").  Also, as discussed above, see supra at § I.C.1, and in the Court's

6    Preliminary Approval Order, the risks of continued litigation were significant.  See Vizcaino, 290

7    F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested

8    fee).  Finally, class counsel took this case on a contingent basis.  (See Dkt. 62-1, Declaration of

9    Edward J. Wynne ("Wynne Decl.") at ¶ 27); see Knight v. Red Door Salons, Inc., 2009 WL

10   248367, *6 (N.D. Cal. 2009) ("The importance of assuring adequate representation for plaintiffs

11   who could not otherwise afford competent attorneys justifies providing those attorneys who do

12   accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on

13   a flat fee.").  In short, consideration of the foregoing factors supports class counsel's request for

14   attorney's fees in the amount of 25% of the settlement fund, or $462,500.  The court, therefore,

15   is satisfied that a lodestar "cross-check" is not required.  See Craft v. City of San Bernardino, 624

16   F.Supp.2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and

17   in some cases is not a useful reference point.").

18        B.    Costs.

19        Class counsel seeks $20,000 in costs.[4]  (See Dkt. 62, Fees Motion at 13; Dkt. 62-1, Wynne

20   Decl. at ¶ 30).  The court finds that the costs incurred by class counsel over the course of this

21   litigation are reasonable, and therefore awards a total of $20,000 in costs.

22        C.    Class Representative Service Award.

23        "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

24   are eligible for reasonable incentive payments."  Staton, 327 F.3d at 977; see Wren, 2011 WL

25   1230826, at *31 ("It is well-established in this circuit that named plaintiffs in a class action are

26   _____

27        [4]    Counsel states that as of the filing of the Fees Motion, he had incurred a total of
     $27,537.63 in out-of-pocket expenses, but has capped his costs at $20,000 per the Settlement
28   Agreement.  (See Dkt. 62-1, Wynne Decl. at ¶ 30).

eligible for reasonable incentive payments, also known as service awards."). Here, plaintiff requests that the court grant a service award in the amount of $20,000. (See Dkt. 62, Fees Motion at 1).

In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the service award at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 60, PAO at 17-18); see also Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that a service award of $5,000 was appropriate. (See Dkt. 60, PAO at 18). The court therefore concludes that the requested service payment of $20,000 is excessive, and instead awards an incentive payment of $5,000.

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Final Approval of Class Action Settlement **(Document No. 63)** is **granted** as set forth herein.

2. The court hereby **grants final approval** to the parties' Joint Stipulation of Class Action Settlement And Release (Dkt. 56-2) and Addendum to Joint Stipulation of Class Action Settlement and Release (Dkt. 57) (collectively "Settlement Agreement") . The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties shall perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3. Plaintiff's Motion for Attorneys' Fees and Costs and Class Representative Award **(Document No. 62)** is **granted in part and denied in part** as set forth herein.

4. The following class is certified under Federal Rule of Civil Procedure 23(c) for settlement purposes: "[A]ll employees of Defendant who worked in California between November 14, 2015, and [June 21, 2019], inclusive, in a Class Position."

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6.  Plaintiff Saeed Hesami shall be paid a service payment of $5,000 in accordance with the terms of the Settlement Agreement and this Order.

7.  Class counsel shall be paid $462,500 in attorney's fees, and $20,000 in costs in accordance with the terms of the Settlement Agreement.

8.  The Claims Administrator, SSI, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

9.  The LWDA shall be paid $18,750 pursuant to the Settlement Agreement.

10.  All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

11.  Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

12.  Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

13.  Judgment shall be entered accordingly.

Dated this 30th day of December, 2019.


/s/
Fernando M. Olguin
United States District Judge